# EXHIBIT A-6



ATTORNEYS AT LAW

299 SOUTH MAIN STREET, SUITE 2000
SALT LAKE CITY, UT  84111
801.401.8900 TEL
385.799.7576 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
801.401.8920
jbraithwaite@foley.com

CLIENT/MATTER NUMBER
120068-0130

July 11, 2022

*Via email only*

Stuart W. Lapp
  slapp@stibbsco.com
Stibbs & Co. P.C.
819 Crossbridge Dr.
Spring, Texas 77373

**Re:**   ***National Oilwell Varco, L.P. v. Garza*, Case No. 4:22-cv-02006**
         **U.S. District Court, Southern District of Texas, Houston Division**

Dear Stuart:

We received your weekend requests that Array immediately respond by noon on Monday, July 11, 2022 regarding your requests and discovery protocol—**which gave Array about *two business hours* to evaluate and respond**. Your client, National Oilwell Varco ("NOV"), has known about the Court's Expedited Discovery Order, and upcoming hearing for over a week and yet chose to wait until this last weekend to make its request and to demand an immediate response from Array.[1]

**1   Any urgency to NOV's request is of NOV's own make because Array asked about NOV's intended discovery since early last week, and NOV waited until this last weekend to make its requests.**

I contacted you about a week ago, on July 5th, stating that Array was willing to cooperate in reasonable discovery to put NOV's baseless crusade to an end. I specifically asked you for specific document requests and whether NOV was asking for a deposition. Your response did not indicate that NOV would seek a deposition and that the only thing you were asking for was an inspection of Mr. Garza's Array-issued laptop. I responded the next day, asking for specifics regarding the proposed inspection. I did not hear back from you regarding the inspection proposal until the afternoon on Saturday, July 9th, accompanied by a demand that I respond by noon Central Time on Monday, July 11th. Further, your proposal turned from a request for an inspection to a requested surrender of Array's computing devices and other information.

---

[1] Array's responses and willingness to cooperate in discovery notwithstanding, Array reserves the right to object to discovery requests from NOV because neither the Federal Rules of Civil Procedure nor the Court's Expedited Discovery Order provide for onerous discovery requests to non-parties at this stage of the proceeding.

| | | | | |
|---|---|---|---|---|
| AUSTIN | DETROIT | MEXICO CITY | SACRAMENTO | TALLAHASSEE |
| BOSTON | HOUSTON | MIAMI | SALT LAKE CITY | TAMPA |
| CHICAGO | JACKSONVILLE | MILWAUKEE | SAN DIEGO | WASHINGTON, D.C. |
| DALLAS | LOS ANGELES | NEW YORK | SAN FRANCISCO | BRUSSELS |
| DENVER | MADISON | ORLANDO | SILICON VALLEY | TOKYO |

4872-7311-8504.1



**FOLEY & LARDNER LLP**

July 11, 2022
Page 2

NOV's conduct here shows the same gamesmanship that NOV has used since the inception of this case, (1) bringing it in an improper jurisdiction—even according to NOV's own forum selection clause in its employment agreement with Garza—(2) getting improper orders *ex parte*, including the *ex parte* forensic order that so violated Texas law that not even NOV opposed its dissolution; and (3) despite Array providing information early on that it was not in possession and had not used NOV trade secrets, unreasonably delaying Array's dismissal until the eleventh hour before the scheduled injunction hearing after requiring Array to address extensive discovery requests and other case issues.

**2  NOV's proposed discovery protocol is an entirely new NOV proposal, without adequate disclosures by NOV, and is unreasonable in its procedure and scope.**

Your discovery protocol send on Saturday afternoon is entirely new and far beyond what we had been previously discussing.

> **2.1  NOV's request for Array indefinitely surrender its computing devices and information to an unknown third party is unreasonable.**

NOV's new proposed protocol provides for a previously undisclosed vendor to get full access to Array's computers and information accessible by those computers. The protective order, that NOV itself drafted and had entered *ex parte*, mandates the disclosure of experts or consultants for at least seven days before any production by way of a signed confidentially agreement and curriculum vitae. NOV has not provided either to Array with respect to the proposed protocol.

Back on July 5th, and even before, I asked NOV for particular document requests so that Array could cooperate and produce responsive documents. NOV stayed silent until this weekend when, instead of requesting particular documents, it asked Array to surrender its computing devices and all information accessible on them to an unknown NOV vendor. This request goes far beyond and is much more invasive that our prior discussion regarding a possible inspection.

NOV's request that Array indefinitely surrender its computing devices and information to a third party is unreasonable—especially where Array is willing to respond to reasonable document requests on its own. NOV's apparent goal seems not to actually request documents from Array but to continue to make more-and-more onerous demands until Array finally says "no."

Array, again, states that it will search for and produce documents in response to reasonable requests, including with respect to a reasonable modification to NOV's list of proposed search terms.

> **2.2  Inexplicably, NOV's discovery requests to Array are more onerous and unreasonable since Array's dismissal compared with when Array was party to the lawsuit.**



July 11, 2022
Page 3

NOV's proposed protocol includes a more expansive list of search terms than similar requests to Array when it was still a party to the lawsuit. Generally, discovery to third parties is less burdensome to third parties than to the parties in the lawsuit. NOV is apparently taking the opposite approach here.

Regarding the breadth of the proposed search terms, some of the terms are likely to hit on every Array document or email and are not designed to particularly identify relevant information. For example, one of the proposed search terms is "@arraytechinc.com." Array employees use email addresses with the domain name @arraytechinc.com. Thus, NOV's proposal would quite literally identify every email in a search of Array employee email, and NOV's proposal is tantamount to requesting every Array email regardless of its content. Similarly, searches for the word "Array" on a computer with Array documents is likely to identify all Array documents. Also, Array's business is solar trackers such that a search for "tracker" is also likely to identify a massive amount of irrelevant Array documents. Several other proposed search terms are similarly generic and likely to identify a large quantity of documents irrelevant to NOV's claims but that may also be highly confidential to Array.[2]

Before NOV dismissed Array as a defendant, NOV's list of proposed search terms was much less extensive and did not include many of the overly broad search terms that NOV now seeks from Array as a third party. Again, in light of this, NOV's goal is apparently burdening Array as opposed to the legitimate search for relevant information.

Further, despite the increased breadth of NOV's new list of search terms, NOV's proposal now asks that *Array be given less time* to review the search results for confidentiality than when it was a named party to the lawsuit.[3] NOV prior *ex parte* forensic order (that was indefensible by NOV as contrary to Texas law) provided *three business days* for Array to review search results. NOV's current proposal is now that Array only be given *two calendar days*. This continues NOV's unreasonable pattern of seeking to burden Array more as a non-party than when Array was actually a party to the lawsuit.

Notwithstanding all of the foregoing, Array is willing to confer on a list of search terms that omits the generic and over expansive terms and to produce documents within a reasonable amount of time responsive to such searches.

---

[2] As further examples, the search terms "kn" and "ul" are likely to identify an overly expansive list of documents that contain any word with the letter combination "kn" or "ul" in them—the examples of which are too numerous to give here. The search terms "tool"; "tracker"; "modify"; "change"; "weight"; "weights"; and "solar tracking" are similarly generic and over broad. Even the terms "confidential" and "propriety" are likely to hit on every email with the common disclaimer/footer that the email "may contain confidential or proprietary information."

[3] As outlined above, any urgency in NOV's requests is a problem of NOV's own making because NOV has known about the upcoming deadlines for over a week and failed to respond to Array's proactive efforts to provide any necessary information.



July 11, 2022
Page 4

**3     NOV's weekend demand to respond to potential disposition topics is unreasonable in both the limited time for evaluation and response as well as breadth in light of the Court's orders in the matter.**

I inquired early last week about whether NOV would be seeking a deposition of Array, and your response that NOV was only looking for an inspection of Mr. Garza's laptop, late on Friday evening, you sent me an email changing your position and stating that you did not know if NOV would want a deposition of Array but were sending along a list of 13 potential topics for discussion with Array. Then on Saturday afternoon, you demanded that I provide a response regarding a deposition of Array by Monday at noon Central Time—essentially allowing only about *two business hours* to discuss the matter with my client.

Two business hours is insufficient time to investigate the topics, Array's response thereto, and the availability of potential witnesses for those topics. And NOV's request again continues the pattern of imposing unreasonable demands on Array as a non-party compared with the discovery expectations before NOV dismissed its claims against Array.

Specifically, the issue of an injunction hearing and information that NOV might need for it has been known to NOV since early June. The Court's order granting NOV's *ex parte* emergency motion for expedited discovery, dated June 13, 2022, which allowed scheduling of a deposition of the defendants (including Array at the time) on "5 calendar days" notice.

**Despite the upcoming injunction hearing at the time while Array was still a defendant, NOV did not seek Array's deposition. Instead, NOV dismissed Array before the injunction hearing. Now that Array is a non-party and all claims against it have been dismissed, NOV is inexplicably asserting that it may need Array's deposition—and on less notice to Array as a non-party than it would have received than when it was a named defendant.**

Further still, the Court's Expedited Discovery Order does not allow for the deposition of non-parties—it permits the deposition of Garza and NOV on three days' notice. And even with respect to the actual parties, the permitted corporate deposition is limited to the issues "to support a preliminary injunction." Your list of potential topics to Array is not so limited. NOV's list of topics appear accusatory against Array—even though NOV dismissed Array as a party. Additionally, some of the topics do address the issues of an injunction. For example, topic 13 to "[h]ow Array assigns value to its intellectual property …" appears directed toward issues of damages, which are not an issue for an injunction hearing, and Array understands should not be an issue in the case against Garza at all. Other topics lack adequate definition. For example, topic 10 requires Array to know what "NOV contends are trade secrets and confidential." NOV has not stated its contentions for Array with respect to the topic such that Array could not investigate whether it has information on the topic and who the potential witness would be.

4872-7311-8504.1



**FOLEY & LARDNER LLP**

July 11, 2022
Page 5

Array has offered to provide a declaration regarding its search for NOV information and files and the fact that it did not find any NOV proprietary information. Array maintains that offer despite being under no obligation to do so.

But NOV's belated request that Array agree to an overly broad deposition without adequate notice and without any permission by the Court to seek such a deposition is altogether improper.

**4    Notwithstanding all of the foregoing, Array still seeks to voluntarily provide information to show that NOV's claims lack merit, but Array also reserves its right to seek sanctions for NOV's unreasonable and erratic conduct, effort to disrupt Array's business, and to unreasonably burden Array as a non-party.**

As covered extensively above, despite NOV's dismissal of all claims against Array, NOV continues to seek evermore burdensome discovery from Array—putting even more burden on Array as a non-party than if Array were still a defendant.

Both the Texas Uniform Trade Secrets Act, 28 U.S.C. § 1927, and the Court's inherent authority allow for sanctions, including attorneys' fees, for bad faith trade-secret misappropriation claims or unreasonable and vexatious litigation conduct. After causing extensive disruption, costs, and fees to Array and an improper temporary restraining order against Array, NOV dismissed all of its claims against Array. Despite the lack of claims against Array, NOV is apparently continuing its efforts to disrupt Array's business and to cause burden, unnecessary costs, and fees to Array. Array will seek appropriate remedies from the Court for litigation misconduct and reserves its right to do so here.

Nevertheless, Array still wishes to pursue resolution of this matter and is willing to cooperate to that end—even though it increasing appears *not* to be NOV's goal. I ask that we schedule a time to discuss what specific information NOV needs end this unnecessary litigation so that we can work together to that end.

Sincerely,

*Jared J. Braithwaite*

Jared J. Braithwaite