IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL OILWELL VARCO, L.P. § | | |
| *Plaintiff*, § | | |
| § | | |
| vs. § | | CASE NO. 4:22-CV-02006 |
| § | | |
| JULIO GARZA, § | | |
| § | | |
| *Defendant.* § | | |

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

Plaintiff National Oilwell Varco, L.P. ("NOV") sues Defendant Julio Garza ("GARZA") for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, the Defend Trade Secrets Act of 2016, and the Computer Fraud and Abuse Act. NOV requests that the Court maintain the current preliminary injunction (Dkt. 61), and, upon final hearing, enter a permanent injunction as detailed below. In support of such relief, NOV states the following:

**SUMMARY OF THIS LAWSUIT**

1.  NOV brings this lawsuit to obtain temporary, preliminary, and permanent injunctive relief against one of its former Senior Solar Engineers, GARZA, based on GARZA's misappropriation and subsequent use of NOV's proprietary and confidential and trade secret information, including, but not limited to, NOV's highly confidential results of third-party engineering studies on a product design prototype, information on manufacturing costs for such product, assembly and installation study results, and design calculations (collectively, the "Confidential Information").

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship among the parties to this suit and the value of the research and development to produce the data GARZA downloaded from NOV exceeds $75,000, exclusive of interest and costs.

3. This Court has personal jurisdiction because GARZA has appeared in this case.

4. Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to NOV's claims occurred in Grimes County, Texas, which is located in this district.

## PARTIES

5. Plaintiff National Oilwell Varco, L.P. is a Delaware limited partnership authorized to do business in Texas with its principal place of business at 7909 Parkwood Circle Dr., Houston, Texas 77036.

6. Defendant Julio Garza is an individual residing in Arizona who has already appeared in this action.

## FACTUAL ALLEGATIONS

A. **GARZA'S ENTERS CONFIDENTIALITY AGREEMENT**

7. GARZA was hired by NOV on May 13, 2019 as a Mechanical Engineer. At the time of his departure, GARZA's position was Senior Solar Engineer. On his hire date, May 13, 2019, NOV and GARZA entered into a valid and enforceable Intellectual Property, Confidential Information and Non-Solicitation Agreement (the "Confidentiality Agreement"). *See* **Exhibit A**, *Intellectual Property, Confidential Information and Non-Solicitation Agreement*. The agreement states in relevant part:

> <u>Company Confidential Information</u>: any and all information in any form or format relating to the Company or entrusted to the Company via third party, including but is not limited to technical information, software, databases, methods, know-how, formulae, compositions, drawings, designs, data, prototypes, processes, discoveries, machines, inventions, concepts, ideas, improvements to any of the aforementioned, well logs or other data, equipment, drawings, notes, reports, manuals, business information, compensation data, customer lists, customer contact information, customer organizational information, customer preferences, customer purchasing history, customer needs, customer designs, financial information, credit information, **pricing information, information relating to future plans, marketing strategies, new product research, historic or pending projects and proposals, proprietary design processes, research and development strategies, intellectual property considered by the Company to be confidential, including Trade Secrets, unpublished patent applications, and related filings, and similar items regardless of whether or not identified as confidential or proprietary**.

*Id*. p.1 at ¶ 3 (emphasis added).

> **I agree to not remove from the Company's premises or its control any Company Confidential Information or Company Intellectual Propert**y, unless specifically authorized to do so or as part of my duties at Company. **This includes not copying or transmitting such information via personal electronic devices, external hard drives**, storage discs, CD's, DVD's, personal email accounts, online storage accounts, and any other similar media. Upon termination, for any reason, of my employment, I shall promptly deliver to the Company all drawings, blue prints, manuals, letters, notes, notebooks, reports, electronic files and if password protected, all passwords necessary to access Company Confidential Information or Company Intellectual Property contained therein, software and all other material which have not been made public relating to the Company's business and which are in my possession or under my control.

*Id*. p.2 at ¶ 4 (emphasis added).

8. NOV designed the Confidentiality Agreement to protect NOV's business goodwill, confidential information, and trade secrets. NOV has spent millions of dollars and countless hours on developing NOV's business, developing NOV's technical capabilities, and developing and managing client relationships. At no point has NOV ever consented to or authorized GARZA to

copy or download NOV's Confidential Information to GARZA's personal external storage devices or otherwise remove Confidential Information from NOV's secure network. Moreover, NOV has never consented to or authorized GARZA to disclose NOV's Confidential Information to Array Technologies, Inc. ("ARRAY").

**B.     NOV AND ARRAY BUSINESSES**

9.      Originally founded in 1862, NOV and its predecessor companies have spent 160 years helping transform oil and gas field development and improving its cost-effectiveness, efficiency, safety, and environmental impact. More recently, by applying its deep expertise and technology, NOV has helped advance the transition toward sustainable energy through cutting edge research and innovation. NOV is at the forefront of the energy evolution, and its energy transition business focuses on supporting eight primary initiatives where NOV is continuously growing and diversifying its core engineering, manufacturing, and project management expertise to its customers: (1) offshore wind; (2) geothermal solutions; (3) carbon capture utilization and storage solutions; (4) biogas solutions; (5) hydrogen solutions; (6) solar energy; (7) repurposing offshore rigs and platforms; and (8) deep-sea mineral extraction.

10.     With respect to its Solar Energy group, the group in which GARZA worked as the lead designer on NOV's proprietary solar tracking system, NOV is researching and developing multiple solutions for capturing, converting, storing, and using solar power for various applications and operations. After spending many years and millions of dollars on research and development, NOV is bringing to market its proprietary ArcMin$^{PV}$ line of solar fixed tilt racking, solar trackers, and digital solutions.[1] This proprietary product line from NOV is its first entry into the solar energy

---

[1] A solar tracker is essentially an integrated system of steel supports, electric motors, gearboxes, and electronic controllers that move solar panels throughout the day to maintain an optimal orientation to the sun, which significantly increases their energy production.

line of products and is expected to be a significant product line as the world moves toward sustainable forms of energy as an alternative to fossil fuels.

11. ARRAY sells a similar, but more antiquated, tracker system called DuraTrack HZ v3. According to the statements contained in ARRAY's most recent 10-K on file with the Securities and Exchange Commission, DuraTrack HZ v3, which was brought to market in 2015, is ARRAY's single-axis tracker that purportedly reduces installation time and contains a passive wind load mitigation system to increase reliability and reduce maintenance costs. *See* **Exhibit D**, Array Technologies, Inc. Form 10-K at p. 2.

12. As with all businesses that hope to remain competitive, ARRAY continually conducts research and development to maintain and expand its market share by employing a development strategy that identifies features to bring value to its customers and differentiate ARRAY for its competitors. The industry is highly competitive and all companies compete on the basis of product performance and features, total cost of ownership, reliability and duration of product warranty, sales and distribution capabilities, training, and customers. The competition for market share is fierce.

**C.   GARZA JOB DUTIES AS A SENIOR SOLAR ENGINEER**

13. NOV initially hired GARZA as a Mechanical Engineer to work in NOV's Houston office located at 10353 Richmond Ave., Houston, Texas, but in reality GARZA spent much of his time in Navasota, (Grimes County) Texas at NOV's Springett Technology Center ("STC") located at 8851 State Highway 105 E., Navasota, Texas.

14. As a Senior Solar Engineer for NOV, GARZA worked with a team of engineers and scientist to design a state-of-the-art solar array tracking system. GARZA and his team primarily worked on designing, building, testing, and commissioning a solar racking system, which is used to support structures needed to hold up solar panels on utility-scale solar farms.

15. The installation of solar panels in a solar farm is labor intensive and there have been industry attempts to reduce manual labor required for solar panel installations. Thanks to the work that GARZA completed for NOV, NOV was able to secure Patent No. US 11,296,649 (the "Patent"), which is a patent for a foldable solar panel assembly. The foldable solar panel assemblies can be easily pre-assembled and transported to a solar farm site where they can be installed. NOV's state-of-the-art assembly enables solar energy farm operators to install solar panel assemblies more easily and cheaply by reducing the manual labor associated with the solar array installation. GARZA is listed as one of the "Inventors" on the Patent, which was issued on April 5, 2022, just weeks before GARZA departed NOV with the stolen files.

16. Because of his role, GARZA had access to NOV's Confidential Information, as NOV defined that term in **Exhibit A**. In fact, many times GARZA was the sole contact with NOV's third-party contractors who performed confidential testing on NOV's proprietary solar tracker design. Specifically, GARZA had access to NOV's engineering studies on NOV's proprietary solar racking system, including but not limited to study results regarding the solar tracking system assembly, installation, and design, manufacturing cost information, and NOV's go-to-market strategy. That is, GARZA was one of a handful of people who had access to *all* of NOV's documents regarding NOV's proprietary solar racking system including the product's strengths, weaknesses, cost to manufacture, marketing timeline, and other crucial design information that would assist companies in unfairly competing against NOV. As alleged *infra*, GARZA abused the trust NOV placed in him by surreptitiously accessing and copying its confidential information.

### D. GARZA'S RESIGNATION FROM NOV

17. On or about April 21, 2022, GARZA sent his letter of resignation to Ed Whitnell, Vice President, NOV Renewables. The letter stated that GARZA was leaving NOV to "pursue another opportunity that is more consistent with [his] career goals." *See* **Exhibit B**, Resignation Letter.

### E. NOV'S DISCOVERY OF GARZA'S BREACH

18. On April 27, 2022, after learning that GARZA would be leaving NOV to work for ARRAY, a competitor of NOV, Ed Whitnell requested an audit through NOV's legal department on GARZA's work-computer to determine if GARZA had downloaded any documents during the last month of his employment.

19. NOV's IT department determined that between February 22, 2022 and April 22, 2022, GARZA downloaded to an external storage device and saved, modified, and/or renamed approximately 94 files, all of which are NOV's Confidential Information. *See* **Exhibit C**. Notably, included in the approximately 94 files NOV discovered GARZA misappropriated are: NOV's highly confidential results of third-party engineering studies on an NOV product design prototype for its Renewables market, information on manufacturing costs for the product, the market launch schedule, structural calculations, assembly and installation study results, design calculations, and NOV's confidential bids for certain projects.

20. These stolen files contain a treasure trove of information that a competitor can use to improve product performance and/or potentially develop a brand-new product. Specifically, the Confidential Information in the files GARZA stole from NOV contains such in-depth information that would allow an unscrupulous competitor to reverse engineer NOV's design and product, saving the competitor significant time, money, and resources, and even improve upon NOV's product. The stolen files also contain proprietary engineering calculators for which NOV paid that

are used specifically for the engineering of solar trackers that GARZA and any competitor can use to improve the speed and efficiency at which GARZA can perform research and development for a competitor.

21. This is only a preliminary assessment of the files and documents GARZA downloaded in violation of his Confidentiality Agreement. The breach of these files represents a significant loss for NOV. Until NOV completes this review, all of NOV's information is at risk for GARZA's use and disclosure for his benefit and potentially ARRAY's benefit to NOV's detriment.

**F.     GARZA IS NOW WORKING FOR ARRAY WITH NOV'S INFORMATION**

22. In the meantime, GARZA is known to be in possession of some of NOV's most secret and protected information, and, prior to ARRAY placing GARZA on paid administrative leave, is believed to have performed many of the same jobs or duties for ARRAY which he performed for NOV.

23. NOV believes the circumstances show that GARZA has disclosed and has used, and, if not enjoined, will disclose and is use, NOV's Confidential Information and trade secrets with ARRAY's knowledge, aid, and encouragement. GARZA's use and disclosure of NOV's Confidential Information is inevitable in the course of his work for ARRAY because, as evidenced by ARRAY's refusal to permit GARZA to return to work from his paid administrative leave, and despite admonishment from the Court, it is probable that GARZA will use NOV's Confidential Information, including, but not limited to, NOV's proprietary calculators and data, for GARZA's benefit.  Such wrongful acts have caused and will continue to cause irreparable harm to NOV's business, good-will, and confidential information and trade secrets. The amount of resulting damages cannot be quantified or cannot be readily assigned a dollar value.

## CAUSES OF ACTION

### COUNT 1 - BREACH OF CONTRACT

24. Paragraphs 7 – 23 are incorporated herein by reference.

25. GARZA agreed to the Confidentiality Agreement. The Confidentiality Agreement is a valid and enforceable agreement between GARZA and NOV. GARZA's activities, as described herein, breached provisions of the Confidentiality Agreement. Specifically, and without limitation, GARZA breached the Confidentiality Agreement because he has used and is using and disclosing Confidential Information of NOV. GARZA has usurped corporate opportunities belonging to NOV and has performed and is performing competitive services using such Information.

26. As a result of GARZA's breaches, NOV has suffered damages. Although, to be clear, NOV does not seek the recovery of damages herein. NOV seeks only injunctive relief and its attorneys' fees and costs as provided by law.

### COUNT 2 - BREACH OF FIDUCIARY DUTY

27. Paragraphs 7 – 23 are incorporated herein by reference.

28. GARZA's employment resulted in his participation in NOV's new and existing product and system development using NOV's Confidential Information. His ongoing and specific associations were something that a third party, like ARRAY, would not likely have been able to develop. In his role as Senior Solar Engineer and employee of NOV, GARZA had the opportunity to assess the product developments of NOV to a company like ARRAY from a vantage point inaccessible to persons outside of NOV.

29. GARZA breached his fiduciary duty to NOV. An agent/principal relationship existed between NOV and GARZA, as well as one of trust and confidence, by virtue of the nature of his employment relationship with NOV. NOV justifiably placed trust and confidence in GARZA to act in NOV's best interest. As such, GARZA stood in a fiduciary relationship with NOV.

Further, GARZA furnished information and advice to NOV regarding product research and development for NOV. GARZA furnished such information and advice with the understanding that NOV would rely on such information and advice. Such circumstances also create a fiduciary relationship between GARZA on the one hand and NOV on the other.

30. As a fiduciary, GARZA owed NOV the duty of loyalty and good faith; the duty of candor; the duty to refrain from self-dealing; the duty to act with integrity of the strictest kind; the duty of fair and honest dealing; and the duty of full disclosure. GARZA also owed NOV a duty not to deal with NOV as or on behalf of an adverse party; the duty to refrain from competing with NOV and/or acting to otherwise assist any competitor of NOV; the duty to refrain from using NOV's property for his own purpose or for the purpose of a third party; the duty to refrain from using or communicating NOV's confidential information to a third party; and the duty to refrain from acquiring a material benefit from a third party in connection with transactions entered on behalf of NOV.

31. GARZA owed NOV a fiduciary duty to act with care, competence, and diligence in light of GARZA's special skills and knowledge, as well as a fiduciary duty to act reasonably and refrain from conduct damaging to NOV's enterprise.

32. On information and belief, GARZA breached these duties. GARZA's breaches of his fiduciary duties are and were unfair and inequitable to NOV and caused NOV damage. On information and belief, such breaches include, without limitation, not acting loyally for NOV's benefit, failing to disclose fully and fairly all important and/or material information to NOV, particularly information pertaining to his intended use of NOV's business, technical, economic, and engineering information, NOV's customer lists and pricing information, and other NOV

Confidential Information and preparing to, intending to, and in fact beginning to compete with NOV.

33. On information and belief, GARZA's failure to comply with his fiduciary duties resulted in a benefit to himself and was a proximate cause of injury, harm, and/or damages to NOV. Although, to be clear, NOV does not seek the recovery of damages herein. NOV seeks only injunctive relief and its attorneys' fees and costs as provided by law.

## COUNT 3 - TEXAS UNIFORM TRADE SECRETS ACT

34. Paragraphs 7 – 23 are incorporated herein by reference.

35. On information and belief, GARZA acquired and now possesses the trade secrets of NOV through improper means and has retained and/or disclosed NOV's trade secret without consent. GARZA is in possession of NOV's trade secrets and other confidential information and in a position to use them, and has used them, to his advantage and to NOV's disadvantage.

36. Information regarding, among other things, NOV's business, technical, economic, and engineering information and other NOV Confidential and trade secret information, are entitled to protection under the Texas Uniform Trade Secrets Act. This information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. This information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

37. NOV's trade secret and confidential and proprietary information is known to NOV and its employees and is sufficiently secret. It has economic value and is protected by Texas law. NOV goes to great expense and takes sufficient measures to maintain the confidentiality of its trade secret and confidential proprietary information by, among other things, requiring employees

to sign nondisclosure agreements and establishing and utilizing an information technology system that restricts access to confidential and proprietary data. GARZA obtained access to such confidential proprietary documents and information solely by virtue of his status as a NOV employee.

38. On information and belief, GARZA retained and therefore misappropriated NOV's trade secrets available to GARZA through his confidential relationship with NOV. GARZA owed a statutory duty to NOV and agreed to only use such trade secrets during his employment with NOV.

39. As a result of the misappropriation of trade secrets and wrongful acts of GARZA, NOV has suffered and continues to suffer damages. Although, to be clear, NOV does not seek the recovery of damages herein. NOV seeks only injunctive relief and its attorneys' fees and costs as provided by law. Specifically, because GARZA engaged in willful and malicious retention and misappropriation of NOV's trade secrets, NOV is also entitled to its attorneys' fees pursuant to Section 134A.005 of the Texas Uniform Trade Secrets Act.

<u>COUNT 4 – DEFEND TRADE SECRETS ACT OF 2016</u>

40. Paragraphs 7 – 23 are incorporated herein by reference.

41. On information and belief, GARZA acquired and now possesses the trade secrets of NOV through improper means and has retained and/or disclosed NOV's trade secret without consent. GARZA is in possession of NOV's trade secrets and other confidential information and in a position to use them, and has used them, to his advantage and to NOV's disadvantage.

42. NOV's business, technical, economic, and engineering information and other NOV Confidential and trade secret information is classified as a trade secret and is entitled to protection under the Defend Trade Secrets Act of 2016. This information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value from its disclosure or use. This information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

43. NOV's trade secret and confidential proprietary information is known to NOV and its employees and is sufficiently secret. It has economic value and is protected by federal law. NOV goes to great expense and takes sufficient measures to maintain the confidentiality of its trade secret and confidential proprietary information by, among other things, requiring employees to sign nondisclosure agreements and establishing and utilizing an information technology system that restricts access to confidential and proprietary data. GARZA obtained access to such confidential proprietary documents and information solely by virtue of his status as a NOV employee.

44. On information and belief, following GARZA's resignation from NOV, GARZA retained NOV's confidential, trade secret, and proprietary information and breached his duty to maintain its secrecy. Specifically, GARZA acquired NOV's trade secret information as part of his duties as an NOV employee and knew or had reason to know that by retaining NOV's confidential, trade secret, and proprietary information following his resignation violated his Confidentiality Agreement and breached his duty to maintain secrecy of NOV's confidential, trade secret, and proprietary information. That is, having been stripped of his authority to retain NOV's confidential, trade secret, and proprietary information upon his resignation, GARZA was not authorized to take the information contained on the electronic storage devices.

45. The confidential, trade secret, and proprietary information that GARZA took relates to a solar tracking system that NOV intends to sell outside of Texas and the United States of America.

46. As a result of the misappropriation of trade secrets and wrongful acts of GARZA, NOV has suffered and continues to suffer damages. Although, to be clear, NOV does not seek the recovery of damages herein. NOV seeks only injunctive relief and its attorneys' fees and costs as provided by law.

## COUNT 5 – COMPUTER FRAUD AND ABUSE ACT

47. Paragraphs 7 – 23 are incorporated herein by reference.

48. The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, provides that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

49. Outside of normal business hours, GARZA, before the time of his departure and the dissolution of his employment relationship with NOV, knowingly and intentionally accessed, downloaded, copied, took, and/or stole NOV's confidential, trade secret, and proprietary information, without authorization and in violation of his Confidentiality Agreement, from NOV's computers and/or computer network.

50. NOV's computers and computer systems are "protected computers" as that term is defined in 18 U.S.C. § 1030(e)(2)(B), because they are connected to the internet and used in interstate commerce and communication in the course of NOV's business, which is global.

51. GARZA intentionally accessed NOV's computer network without authorization and downloaded approximately 94 files which contained NOV's confidential, trade secret, and proprietary information from NOV's computer network to his personal USB device. While NOV has located most of the files GARZA downloaded, NOV cannot locate some of the files GARZA downloaded.

52. As a result of GARZA's conduct, NOV has sustained damages totaling in excess of $5,000, including those incurred in the course of NOV's investigation and response to GARZA offense. Pursuant to the statute, the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, and any revenue lost, cost incurred, or other consequential damages incurred. Although, to be clear, NOV does not seek the recovery of damages herein. NOV seeks only injunctive relief and its attorneys' fees and costs as provided by law.

## RELIEF SOUGHT

53. NOV's Employee Dispute Resolution ("EDR") program provides for arbitration arising from employment-related legal disputes between NOV and its employees. However, the EDR program **does not** cover claims seeking injunctive relief due to the theft of NOV's confidential and trade secret information, due to the use or unauthorized disclosure of NOV's confidential and trade secret information, or due to the breach of restrictive covenants. Although NOV does not seek to recover damages in this lawsuit, NOV expressly reserves the right to seek damages against GARZA in arbitration.

54. Based on the foregoing facts and causes of action, NOV is entitled to its attorneys' fees incurred in prosecuting this case, in accordance with Chapter 38 of the Texas Civil Practice and Remedies Code, Section 134A.005 of the Texas Civil Practices and Remedies Code, and the Defend Trade Secrets Act of 2016. NOV is also entitled to specific performance of the Confidentiality Agreement, including all provisions restricting disclosure and use of confidential information.

55. NOV has already secured a preliminary injunction (Dkt. 61) and now seeks a permanent injunction under Tex. Civ. Prac. & Rem. Code § 65.011 and Fed. R. Civ. P. 65. Accordingly, NOV requests that the Court maintain the current preliminary injunction (Dkt. 61), and, upon final hearing, enter a permanent injunction enjoining the following:

a. Enjoining GARZA from, directly or indirectly, destroying or disposing of any documents or information that was downloaded from or copied from Plaintiff's computer servers or removed from Plaintiff's business premises, including without limitation, the documents and files identified on Exhibit "C" attached to Plaintiff's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction; any documents or information that in any way relate to the allegations in Plaintiff's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction; any evidence that is in any way related or connected to such allegations; any documents or information that are the property of Plaintiff, including any proprietary, confidential and/or trade secret information of Plaintiff; and any documents or information that evidence or reflect, or are in any way related or connected to, the allegations of breach of contract, breach of fiduciary duty, or the allegations of misappropriation or use of Plaintiff's proprietary, confidential and/or trade secret information, by Defendants or those in active concert with Defendants; and

b. Enjoining GARZA from directly or indirectly, using, disclosing, receiving, transmitting, or transferring Plaintiff's confidential information and trade secret information, including but not limited to any information of or relating to: (1) Plaintiff's solar racking systems, solar arrays, solar trackers, solar tracking software, or solar energy technology, including but not limited to, Plaintiff's ArcMin$^{PV}$ line of solar fixed tilt racking, solar trackers, and digital solar tracker technology; (2) Plaintiff's marketing strategies, prices, margins, discounts, vendors, customers, bids, quotes, charges, equipment, services, sales history and performance; (3) the performance, use, manufacture, engineering, design, research, use, analysis, performance, sales, marketing, rental, product development, business development, strengths and weaknesses of products and services in Plaintiff's solar product line; (4) the specific customers who use or have used each such product; (5) Plaintiff's revenue, costs, profits, and profit margins associated with products for customers in the specific area served by the Plaintiffs; (6) Plaintiff's sales and profit goals and plans to achieve such goals; (7) Plaintiff's annual or other budgets for any of its solar business lines; and (8) specific sales opportunities learned about while working for Plaintiffs ("Confidential Information").

## JURY DEMAND

56. NOV hereby demands a trial by jury.

## PRAYER

NOV respectfully prays that the current preliminary injunction (Dkt. 61) remain in place, and, after final hearing, that the Court enter permanent injunctive relief as detail above, as well as award NOV its reasonable and necessary attorney's fees incurred. Additionally, NOV respectfully prays that it be awarded all other and further relief, general and specific, legal or equitable, to which it may justly be entitled.

[*Signature Page to Follow*]

DATED: August 23, 2022.

                                      Respectfully submitted,

**STIBBS & CO., P.C.**

*/s/Stuart W. Lapp*
Stuart W. Lapp
State Bar No. 11946100
slapp@stibbsco.com
Bret W. Davis
State Bar No. 05462100
bdavis@stibbsco.com
Joshua A. Redelman
State Bar No. 24099269
jredelman@stibbsco.com
750 William D. Fitch, Suite 210
College Station, Texas 77845
Telephone: (979) 383-2270
Facsimile: (979) 314-9790


**STACY & BAKER, P.C.**

*/s/Chris A. Stacy*
Chris A. Stacy
State Bar No. 18988700
chris.stacy@stacybakerlaw.com
Brian A. Baker
State Bar No. 24082648
brian.baker@stacybakerlaw.com
Cynthia Castanon
State Bar No. 24093492
cynthia.castanon@stacybakerlaw.com
5300 Memorial, Suite 270
Houston, Texas 77007
Ph: 713-527-9991 | Fx: 713-527-9992

**ATTORNEYS FOR PLAINTIFF NATIONAL OILWELL VARCO, L.P.**

**CERTIFICATE OF SERVICE**

    I certify that I served a true and correct copy of the foregoing *Plaintiff's Second Amended Original Complaint* on counsel of record for all interested parties on August 23, 2022, through the ECF filing system, as follows:

Audrey F. Momanaee
amomanaee@balch.com
**BALCH & BINGHAM, LLP**
811 Louisiana St., Suite 1010
Houston, Texas 77002

**ATTORNEY FOR DEFENDANT JULIO GARZA**

Rachel Powitzky Steely
rsteely@foley.com
**FOLEY & LARDNER LLP**
1000 Louisiana St., Suite 2000
Houston, Texas 77002

**ATTORNEY FOR INTERESTED PARTY ARRAY TECHNOLOGIES, INC.**

                                    */s/Brian A. Baker*
                                    Brian A. Baker